UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SHERYL A. PEASE and LITTLE SPROUTS DAY CARE, <br>                Plaintiffs <br><br><br> v. <br><br><br> KAREN BURNS, ERIN MURPHY CRAFT, LINDA LENAHAN, ERIC LIEBERMAN, JUDY PASKO, DENISE J. KARLIN, BRIAN LETENDRE, IRIS CRISPO, CONSTANTIA T. PAPANIKOLAOU, JOHN DALY, ANN REALE, JOHN and JANE DOE A-Z, THE DEPARTMENT OF EARLY EDUCATION AND CHILDCARE, and THE COMMONWEALTH OF MASSACHUSETTS, <br>                Defendants | ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil Action No.  08-30222-MAP <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

MEMORANDUM AND ORDER WITH REGARD TO MOTION
FOR ADMISSION PRO HAC VICE (Document No. 32)
January 13, 2010

NEIMAN, U.S.M.J.

Presently before the court is a motion for admission *pro hac vice* by Louis A.

Piccone ("Piccone") for the purpose of representing Sheryl Pease and Little Sprouts

Day Care ("Plaintiffs").  The motion, signed by Plaintiffs' attorney, Robert M. Fuster, Jr.,

has been filed pursuant to Rule 83.5.3(b) of the Local Rules of the United States

District Court for the District of Massachusetts.

In full, Local Rule 83.5.3(b) provides as follows:

> An attorney who is a member of the bar of any United States
> District Court or the bar of the highest court of any state may
> appear and practice in this court in a particular case by
> leave granted in the discretion of the court, provided he files

> a certificate that (1) he is a member of the bar in good
> standing in every jurisdiction where he has been admitted to
> practice; (2) there are no disciplinary proceedings pending
> against him as a member of the bar in any jurisdiction; and
> (3) he is familiar with the Local Rules of the United States
> District Court for the District of Massachusetts; and
> provided, further his application for leave to practice in this
> court is on motion of a member of the bar of this court, who
> shall also file an appearance.  An attorney seeking
> admission under this subsection may not enter an
> appearance or sign any papers until his application has
> been granted, except that the attorney may sign a complaint
> or any paper necessary to prevent entry of default for failure
> to answer or otherwise plead, provided such complaint or
> other paper is accompanied by his application for admission
> in proper form.

Rule 83.5.3(b), Local Rules of the United States District Court for the District of

Massachusetts.

Here, Piccone has filed a Certificate of Good Standing indicating that he is duly

admitted to the bar of the Commonwealth of Pennsylvania and is in good standing

there as of October 28, 2009.  He has also declared on penalty of perjury that there are

no pending disciplinary proceedings against him as a member of the bar in any

jurisdiction, that he has "perused" the local rules of this court, and that he agrees to

conduct himself in accord with those rules.  Moreover, his application is on motion of a

member of the bar of this court.  Despite such compliance with the rule, the court, for

the reasons which follow, will exercise the discretion accorded by the rule and deny the

motion.

## I.  BACKGROUND

Piccone first had contact with this court in 2005 when, proceeding *pro se* and as

guardian of his minor son, he brought a civil rights action against a local school district. *See Piccone v. Central Berkshire Reg'l Sch. Dist.*, Civil Action No. 05-30239-KPN ("*Central Berkshire*"). The matter was soon resolved and, in the court's view, raises no issues with regard to the present motion.

Piccone next had contact with this court in both 2008 and in 2009 with regard to two matters concerning Lucy Babeu, *Babeu v. Linker*, Civil Action No. 08-30127-MAP ("*Babeu I*"), and *Babeu v. Linker*, Civil Action No. 09-30045-MAP ("*Babeu II*"). In *Babeu I*, Ms. Babeu alleged that social workers with the Massachusetts Department of Social Services ("DSS") removed her two children and placed them in foster care. The complaint was signed both by Ms. Babeu individually and Piccone "pending admission *pro hac vice*." *Babeu I*, Doc. No. 1 at *26.[1] The action, however, did not survive very long. In response to a motion by the defendants, this court ordered Piccone to arrange for the filing of a formal motion for admission *pro hac vice*. "If counsel fails to file such a motion or if such a motion is disallowed for any reason," the court warned, Ms. Babeu "shall be required to proceed *pro se*." *Id.*, Electronic Order, dated Oct. 21, 2008. A *pro hac vice* motion was never filed, but another attorney did appear for Ms. Babeu. That attorney, however, failed to oppose the defendants' subsequent motion to dismiss. As a result, on December 15, 2008, District Judge Michael A. Ponsor dismissed the matter on its merits and closed the case.

Three months later, on March 17, 2009, Ms. Babeu, again with Piccone's

---

[1]  It appears that Piccone erased his signature on an amended complaint subsequently filed in *Babeu I* but did, in fact, sign the certificate of service.

assistance, filed *Babeu II*.  In a Report and Recommendation dated April 3, 2009,

however, this court recommended that it be summarily dismissed.  First, the court

explained that there were only minor "odd" differences from *Babeu I*, *e.g.*, it now

appeared to include marginal editorial comments as well as Piccone's non-erased

signature.  (See n.1, *supra*.)  Second, the court noted that neither one of Ms. Babeu's

complaints had included a Massachusetts Board of Bar Overseers ("BBO") registration

number for Piccone.  *See* Rule 5.1(a)(1) of the Local Rules of the United States District

Court for the District of Massachusetts ("The board of bar overseers registration

number of each attorney signing [pleadings, motions, and other papers] . . . shall be

inscribed below the signature.").  Nor was there any indication that Piccone had ever

been admitted to practice in this district.  *See generally* Rules 83.5.2 and 83.5.3 of the

Local Rules of the United States District Court for the District of Massachusetts.  Third,

the court recommended summary dismissal because of the following:  (1) *res judicata*

precluded Ms. Babeu from attempting to relitigate an identical action previously

dismissed; (2) even if the complaint could survive that hurdle, Ms. Babeu had again

failed to state claims upon which relief could be granted given that the defendants'

merits-based arguments in their earlier motion to dismiss were equally applicable; and

(3) the court lacked subject matter jurisdiction over Ms. Babeu's claims for the very

reasons the defendants asserted in the prior action, namely, they were immune from

suit and/or the abstention doctrine continued to preclude federal judicial review.  In

addition, the court voiced its concerns that Piccone was attempting to play fast and

loose with the district's rules governing appearances and practice by persons not

4

members of the bar.

On April 24, 2009, Judge Ponsor adopted the recommendation and dismissed *Babeu II*.  When doing so, Judge Ponsor also referred the matter to the BBO because of Piccone's "unorthodox efforts" with respect to representing Ms. Babeu.  *Babeu II*, Doc. No. 6 at *2.  As the court now understands, the referral was later forwarded by the BBO to the Disciplinary Board of the Supreme Court of Pennsylvania; during the course of *Babeu II*, Piccone had indicated that he was a member of the bar of that state.

Piccone's next contact with this court came in August of 2009 in *Hohn v. Burke*, Civil Action No. 09-30143-MAP ("*Hohn*").  There, Krista Lynn Hohn, ostensibly proceeding *pro se*, submitted for filing a complaint against two employees of DSS as well as the Clerk Magistrate of the Juvenile Court in Pittsfield.  Together with her complaint -- which indicated that it was "prepared with the aid of Louis A. Piccone, Esq.," who is "[a]dmitted in Pa and Patent Bar Only" and living in "Dalton, MA," *id.*, Doc. No. 1 -- Ms. Hohn filed an application for leave to proceed *in forma pauperis*.  This court granted the motion but, in doing so, placed Ms. Hohn on notice of its concerns: (1) that Piccone may well be practicing law despite the fact that he was not admitted to do so in this district or in the Commonwealth of Massachusetts; and (2) that she would likely be left to proceed *pro se* without Piccone's assistance.

The court also notified Ms. Hohn that its concerns about Piccone would be conveyed to the Disciplinary Board of the Supreme Court of Pennsylvania.  The court explained that, although Piccone's involvement in her case had "somewhat different stripes" than the *Babeau* matters -- since he had neither indicated an intent to proceed

*pro hac vice* nor signed the pleadings -- it appeared to be the "same zebra." *Id.*, Doc.

No. 4 at *3. "Put bluntly," the court stated, "by obviously aiding [Ms. Hohn's] case

without admission in this jurisdiction, Piccone still seems to be playing fast and loose

with this court's rules." Accordingly, the court directed the Clerk to forward a copy of its

memorandum and order to the Disciplinary Board of the Supreme Court of

Pennsylvania for its consideration and review. "Given that Piccone is evidently

licensed in Pennsylvania," the court indicated, "that jurisdiction would appear to have

the most appropriate power to impose sanctions deemed appropriate."

  The court is aware of one other case in which Piccone is involved, this time as a

plaintiff together with his wife Elena. *See Piccone  v. McClain*, Civil Action No. 09-

30146-MAP ("*McClain*"). That case makes civil rights claims against the Commissioner

of the Massachusetts Department of Children and Families ("DCF"), the successor to

DSS, as well as various DCF employees, individuals connected with the Town of

Dalton, and the Massachusetts State Police. Piccone's status as a party in that matter

appears appropriate and raises no concern with this court. As set forth below,

however, the complaint does describe acts taken by Piccone in ways specifically

related to the  motion for admission *pro hac vice* at issue here.

## II. DISCUSSION

  It is apparent from the certificate from Pennsylvania that Piccone is presently in

good standing with the bar of that state. That status, however, in no way precludes this

court from examining Piccone's actions in Massachusetts and this district with regard to

his application to proceed *pro hac vice*. Having undertaken that examination, the court

concludes that Piccone's motion for admission *pro hac vice* should be denied.

As indicated, Local Rule 83.5.3(b) grants the court discretion in determining whether or not to allow a motion for leave to appear *pro hac vice*.  The rule derives, in part, from 28 U.S.C. § 1654, which provides that "[i]n all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein."  *See also* Fed. R. Civ. P. 83 (authorizing district courts to adopt local rules).

To be sure, motions for *pro hac vice* admission are generally granted as a matter of course.  *See Kampitch v. Lach*, 405 F. Supp. 2d 210, 215 (D.R.I. 2005). Nonetheless, as the Court of Appeals for the First Circuit has explained, "[a]dmission before the Bar traditionally has been considered primarily and initially subject to control by the admitting court and this control is subject to review only by reason of abuse of discretion or constitutional infirmities in the exercise of the control."  *Panzardi-Alvarez v. United States*, 879 F.2d 975, 980 (1st Cir. 1989).  *See also Frazier v. Heebe*, 482 U.S. 641, 651 n.13 (1987) (noting that "in many District Courts, the decision on whether to grant *pro hac vice* status to an out-of-state attorney is purely discretionary").  The discretion to deny *pro hac vice* admission has been exercised in a variety of situations: conflicts of interest, *D.H. Overmyer Co. v. Robson*, 750 F.2d 31 (6th Cir. 1984), appearances of impropriety, *Fred Weber, Inc. v. Shell Oil Co.*, 566 F.2d 602 (8th Cir. 1977), and unlawyerlike conduct, *Thomas v. Cassidy*, 249 F.2d 91 (4th Cir. 1957).  *See also United States v. Panzardi Alvarez*, 816 F.2d 813, 817 (1st Cir. 1987) (recognizing that a court may in its discretion deny *pro hac vice* application because of unethical

7

conduct).

Here, the court believes, first, that Piccone has been practicing law in Massachusetts without being authorized to do so. Granted, the Massachusetts Supreme Judicial Court ("SJC") has indicated that "[i]t is not easy to define the practice of law." *In re Chimko*, 831 N.E.2d 316, 321 (Mass. 2005). However, there can be no doubt, as described in greater detail below, that Piccone has been engaged in such practice in both this state and district. Second, as described in the background section above, Piccone's conduct, at least with regard to matters before this court, has been frequently inappropriate and unprofessional. *See Kohlmayer v. Nat'l R.R. Passenger Corp.*, 124 F. Supp. 2d 877, 879-80 (D.N.J. 2000) (proper for court to consider evidence of past behavior by counsel in other matters). In the court's estimation, Piccone has engaged in a pattern of behavior which not only purposefully skirted its authority but, as well, wasted judicial resources and potentially harmed litigants.

As described, Piccone signed the complaint in *Babeu I* "pending admission *pro hac vice*" but never sought such admission, either before or after the defendants filed a motion seeking such an application. Instead, another attorney appeared who, unfortunately, failed to contest the defendants' motion to dismiss. As described, that case was dismissed and closed.

Undeterred, Piccone signed the same complaint in *Babeu II*, indicating again that it was "pending admission *pro hac vice*." When this court recommended that the complaint be summarily dismissed, primarily on *res judicata* grounds, Piccone -- who had still not moved to appear *pro hac vice* -- filed an objection on behalf of Ms. Babeu

8

in which he contested the merits of the court's dismissal of *Babeu I*. Piccone claimed in

his objection that he satisfied the requirements of Local Rule 83.5.3(b) and that his

motion for such admission "will be submitted based upon a motion of a member of the

bar of this court." No such motion was ever filed.

Piccone also explained in his objection that he signed the *Babeu II* complaint so

as "to indicate that an attorney was involved in the drafting of the complaint for a pro se

litigant as ethically recommended" in a 2001 article entitled "Ghostbusters" by Grace M.

Jones, a copy of which appears on the BBO's Office of Bar Counsel's website and was

appended to the objection. "Ghostwriting," the article indicated, "circumvents Rule 11

of the applicable Rules of Civil Procedure," which usually addresses the signing of

pleadings, "and may also violate any of a number of disciplinary rules." *Babeu II*, Doc.

No. 5, Exhibit at *1. *See also Ellis v. Maine*, 448 F.2d 1325, 1328 (1st Cir. 1971)

(noting that a lawyer substantially participating in the drafting of a pleading would

violate Rule 11 by not signing the pleading); *Laremont-Lopez v. Southeastern

Tidewater Opportunity Ctr.*, 968 F. Supp. 1075, 1079-80 (E.D. Va. 1997) (finding the

practice of ghostwriting legal documents "inconsistent with the procedural, ethical and

substantive rules of this Court"). Accordingly, the article suggested, a lawyer should

disclose to the court his or her preparation of any litigation documents, "even a single

pleading," as well as the limited scope of the representation. *Babeu II*, Doc. No. 5,

Exhibit at *3. It was apparently this suggestion that led Piccone to sign the pleading as

he did.

Left unaddressed by Piccone in his objection, however, was the underlying

9

assumption in the article that the ghostwriting lawyer was duly licensed to practice law in Massachusetts. *See id.* As is now evident, Piccone is still not licensed to practice in this state or, for that matter, this district. Thus, the fact that he acknowledges writing the pleadings, relatively sophisticated ones at that, is in effect an admission that he is advising citizens of Massachusetts of their rights, with little, if any, ability on their part to do more on their own. In any event, as indicated, Judge Ponsor adopted the court's recommendation and summarily dismissed *Babeu II*.

Piccone's unauthorized practice of law became evident again in *Hohn*. The complaint there was not signed by Piccone but was admittedly "prepared with the aid of Louis A. Piccone, Esq., Admitted in Pa and Patent Bar Only." *Hohn*, Doc. No. 1 at *11. As distinct from both *Babeu* matters, however, there was no indication of any intent on Piccone's part to seek *pro hac vice* admission. Piccone may well have believed that this altered approach would still comport with the advice in the Ghostbusters article; the court would certainly disagree. More problematically, however, Piccone's actions in *Hohn* actually ran afoul of other cautionary bells rung in the article, most particularly that "[i]f the case presents complicated legal issues, it is imprudent for the lawyer to agree to draft a pleading without entering an appearance." *Babeu II*, Doc. No. 5, Exhibit at *2. Even a cursory review of the *Hohn* complaint reveals it to be anything but uncomplicated. As a result, Hohn, who to this day continues to appear *pro se*, was set adrift by Piccone to pursue the seven sophisticated causes of action drafted by him. This is the very consequence which, taken together, the Massachusetts licensing requirements and this district's rules of admission, *pro hac vice* included, were

designed to avoid.[2]

Piccone's practice of law in Massachusetts is also revealed by the allegations in the *McClain* complaint.  Understandably, Piccone himself, as a plaintiff, has chosen to be represented by counsel in that case and, again, the court voices no opinion on the merits of the claims he and his wife pursue in that matter.  Particular factual allegations in the complaint, however, indicate that Piccone, on behalf of the individual and day care center (who appear to be the plaintiffs in the case at bar), was practicing law in Massachusetts, albeit not yet in front of this court, without being licensed to do so.  In applicable part, the complaint alleges that "Piccone -- who is an attorney licensed to practice in Pennsylvania and before the U.S. the Patent Bar [sic] -- began assisting a Massachusetts attorney defend a day care center in Pittsfield, Massachusetts against allegations of child neglect made by [the Department of Early Education ("EEC")]."  *McClain*, Doc. No. 1 ¶ 23.  The complaint describes how Piccone himself "had communications with [EEC's] General Counsel . . . , during which he informed her that based on EEC's application of the law, it would be necessary to file a federal lawsuit

---

[2]    At the October 1, 2009, scheduling conference, the court inquired as to what Piccone meant by being admitted to the "Patent Bar."  He represented that he is admitted to practice before the United States Patent and Trademark Office ("PTO") in Washington, D.C.  As far as the court is aware, however, this gives Piccone no particular right to practice in Massachusetts, except perhaps with regard to patent matters pending before the PTO.  *See Sperry v. State of Fla. ex rel. Fla. Bar*, 373 U.S. 379, 385 (1963) (holding that Florida could not enjoin nonlawyer registered to practice before PTO from pursuing patent applications in Florida, notwithstanding fact that such activities constituted the practice of law in that state, in view of federal regulations authorizing practice before the PTO by nonlawyers).  Obviously, each of the matters cited in this memorandum in which Piccone has been involved has nothing to do with patents.

challenging the constitutionality of . . . two Massachusetts statutes under which both DCF and EEC operate." *Id.* ¶ 24. To be sure, the complaint goes on to allege that these contacts led to acts on the part of the various defendants which violated Piccone's and his wife's civil rights. But, again, the language quoted above indisputably describes the practice of law by Piccone in Massachusetts.

In sum, Piccone's various activities as an attorney in these several matters go far beyond the more limited activities addressed in *In re Chimko*. There, the SJC found that a Michigan attorney's completion of parts of a *pro se* debtor's bankruptcy reaffirmation agreement did not amount to the practice of law in Massachusetts. *Id.*, 831 N.E.2d at 322-23. In coming to this conclusion, the SJC noted that the attorney was situated in Michigan at the time of the events at issue and did not invoke his professional judgment or dispense legal advice. *Id.* at 323 (also indicating that, at most, the attorney's activities fell "at the very periphery of such practice"). *See also Lindsey v. Ogden*, 406 N.E.2d 701, 708 (Mass. App. Ct. 1980) (New York lawyer, who never drew any documents in Massachusetts, did not engage in unauthorized practice of law by coming to Massachusetts to oversee execution of will by Massachusetts client whose estate the lawyer had planned in his New York office).

In contrast, Piccone's activities in the *Babeu* and *Hohn* matters have been of a very different magnitude. They involve the drafting of sophisticated complaints by a Massachusetts-domiciled attorney, complaints which *pro se* plaintiffs would be hard-pressed to pursue on their own. Two of the complaints, moreover, were drafted with the avowed intention of Piccone eventually appearing *pro hac vice*, but motions to that

12

effect were never filed.  And, finally, Piccone's representation of the day care center (in

the case now at bar) in its prelitigation dispute with a state agency, as described in

*McClain*, surely involved the practice of law.

It appears as well that Piccone has run afoul of Rule 5.5 of the Massachusetts

Rules of Professional Conduct, which rule deals with the unauthorized practice of law

in the context of multijurisdictional practice.[3]  First, he is not admitted to practice in

---

[3]  Rule 5.5, in its entirety, provides as follows:

(a)  A lawyer shall not practice law in a jurisdiction in violation of the
regulation of the legal profession in that jurisdiction, or assist another in
doing so.

(b)  A lawyer who is not admitted to practice in this jurisdiction shall not:

(1)  except as authorized by these Rules or other law, establish an
office or other systematic and continuous presence in this
jurisdiction for the practice of law; or

(2)  hold out to the public or otherwise represent that the lawyer is
admitted to practice in this jurisdiction.

(c)  A lawyer admitted in another United States jurisdiction, and not
disbarred or suspended from practice in any jurisdiction, may provide
legal services on a temporary basis in this jurisdiction that:

(1)  are undertaken in association with a lawyer who is
admitted to practice in this jurisdiction and who actively
participates in the matter;

(2)  are in or reasonably related to a pending or potential
proceeding before a tribunal in this or another jurisdiction, if
the lawyer, or a person the lawyer is assisting, is authorized
by law or order to appear in such proceeding or reasonably
expects to be so authorized;

(3)  are in or reasonably related to a pending or potential
arbitration, mediation, or other alternative dispute resolution

Massachusetts, where he has resided since at least July of 2005, *see Central Berkshire*, Doc. No. 1 ¶ 15, but, in contravention of Rule 5.5(b)(1), appears to have been continuously present in the state practicing law in the ways described.  *See* Rule 5.5, comment [5] ( "With the exception of paragraph (d)(1) and (d)(2), this Rule does not authorize a lawyer to establish an office or other systematic and continuous presence in [Massachusetts] without being admitted to practice generally here.").

---

> proceeding in this or another jurisdiction, if the services arise out of or are reasonably related to the lawyer's practice in a jurisdiction in which the lawyer is admitted to practice and are not services for which the forum requires pro hac vice admission; or
>
> (4)  are not within paragraphs (c)(2) or (c)(3) and arise out of or are reasonably related to the lawyer's practice in a jurisdiction in which the lawyer is admitted to practice.
>
> (d) A lawyer admitted in another United States jurisdiction, and is not disbarred or suspended from practice in any jurisdiction, may provide  legal services in this jurisdiction that:
>
> > (1)  are provided to the lawyer's employer or its organization affiliates and are not services for which the forum requires pro hac vice admission; or
> >
> > (2)  are services that the lawyer is authorized to provide by federal law or other law of this jurisdiction.

Rule 3:07, Rules of the Supreme Judicial Court: Massachusetts Rules of Professional Conduct, Rule 5.5 (Unauthorized Practice of Law; Multijurisdictional Practice of Law). Rule 5.5 tracks a model rule of the American Bar Association, which has been described as "a common sense approach to the problem of aligning the Rules of Professional Conduct with everyday practice."  Kenneth L. Carson, *Legalizing It? Lawyers Practicing Across State Lines*, 46 Boston Bar Journal 18 (March/April 2002) ("The proposed general rule is that providing legal services in another state on a temporary basis is not unauthorized practice of law so long as that practice does not create an unreasonable risk to the interests of the client, the public, or the courts.").

Second, the legal services which he has provided in Massachusetts, as described, can hardly be deemed to have been provided on a temporary basis, given the multiple cases in which he has been involved. *See* Rule 5.5(c). Third, there is no indication that Piccone's legal services have been provided in Massachusetts because of any particular organizational affiliation or as authorized by federal law. *See* Rule 5.5(d). Fourth, while a comment to the Rule contemplates that a lawyer may engage in certain conduct "in anticipation of a proceeding . . . in which the lawyer reasonably expects to be admitted pro hac vice," Piccone never formally sought such status in either *Babeu* matter and never indicated that he intended to do so in *Hohn*. Rule 5.5, comment [10]. Given all the facts, therefore, Piccone would have a difficult time squeezing into the exception established by Rule 5.5, a rule which, after all, is designed to "protect[ ] the public against rendition of legal services by unqualified persons." Rule 5.5, comment [2].

The court understands that, were it to grant the instant motion, it could oversee Piccone's practice of law in this court, which to date he has eluded since he has never formally appeared here as an attorney. Piccone, as an out-of-state attorney, has also avoided oversight by the BBO, with which, evidently, he has had no obligation to register. *See generally* Charles W. Wolfram, "*What Needs Fixing?" Expanding State Jurisdiction to Regulate Out-of-State Lawyers,* 30 Hofstra L. Rev. 1015 (2002). For the reasons described, however, the court is reluctant to reward such evasion and unreasonable behavior with *pro hac vice* admission in this case at this time. For the moment, therefore, the court can only hope that this memorandum and order will rein in

15

Piccone's future actions, motivate him to become fully conversant with the laws of Massachusetts, and/or apply for membership to its bar.

III.  CONCLUSION

For the reasons stated, the Motion for Admission Pro Hac Vice is DENIED.

IT IS SO ORDERED.

DATED: January 13, 2010

   /s/ Kenneth P. Neiman   
KENNETH P. NEIMAN
U.S. Magistrate Judge