UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

SHERYL A. PEASE and          )
LITTLE SPROUTS DAY CARE,      )
        Plaintiffs           )
                             )
              v.             )   C.A. No. 08-CV-30222-MAP
                             )
KAREN BURNS, ET AL.,         )
        Defendants           )

MEMORANDUM AND ORDER REGARDING
DEFENDANTS' MOTION TO DISMISS
(Dkt. No. 27)

June 28, 2010

PONSOR, D.J.

I. INTRODUCTION

        Plaintiffs Sheryl Pease and Little Sprouts Day Care
(collectively, "Plaintiffs") have filed suit against the
Commonwealth of Massachusetts, the Massachusetts Department
of Early Education and Care ("EEC"), and eleven state
employees in their individual and official capacities
alleging, inter alia, that Defendants violated Plaintiffs'
rights under the Fourth, Fifth, Seventh, Eighth and
Fourteenth Amendments to the United States Constitution.
The Complaint as amended, which also asserts a number of
pendant state tort claims, seeks declaratory relief,
compensatory damages in the amount of fifty million dollars,
and unspecified exemplary damages.  All of Plaintiffs'
claims relate to a 2007 revocation of their license to

provide group day care services in Massachusetts.

Defendants have moved to dismiss all counts pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted.  (Dkt. No. 27).  Defendants contend: (1) that any claims asserted against the Commonwealth and EEC are barred by the Eleventh Amendment; (2) that Plaintiffs cannot show that they have been deprived of any constitutional right as a matter of law; (3) that the Complaint is vague and conclusory and thus fails to meet the pleading requirements enunciated in <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009) and <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007); and (4) that the court should exercise its discretion to dismiss Plaintiffs' state causes of action upon the dismissal of the federal claims.  A hearing on the motion was held on January 7, 2010.  For the reasons stated below, Defendants' Motion to Dismiss will be granted.

## II. <u>FACTS</u>

The court's summary of the facts is drawn principally from Plaintiffs' Amended Complaint, with all reasonable inferences drawn in their favor.  <u>Watterson v. Page</u>, 987 F.2d 1, 3 (1st Cir. 1993).  Where appropriate, the court supplements the facts with reference to the written decision of the Massachusetts Division of Administrative Law Appeals

2

("DALA").[1]

Plaintiff Little Sprouts Day Care ("Little Sprouts") is a day care service provider that operated in the city of Pittsfield, Massachusetts from July 2003 through July 2007. (Dkt. No. 38, Pls.' First Am. Compl. (hereinafter "Compl.") at ¶ 6.)   Little Sprouts was licensed by EEC to provide child care services within the Commonwealth.   Id.   At the height of its operations, Little Sprouts provided services to forty-four children.   (Compl. at ¶ 25.)   Plaintiff Sheryl

---

[1]Although a court is ordinarily prohibited from looking beyond the four corners of a complaint when appraising its sufficiency under Rule 12(b)(6), this Circuit has long recognized "exceptions for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." Watterson, 987 F.2d at 3 (citing cases).   Here, the DALA decision, which is appended to Defendants' reply to Plaintiffs' opposition, is referenced repeatedly in both parties' arguments.   It is a public document whose authenticity neither party has challenged and its existence, timing, and outcome bear directly on a number of Plaintiffs' constitutional claims.   It is thus susceptible to judicial notice without converting Defendants' motion to one for summary judgment.   Id.   Accord Furnari v. Warden, Allenwood Fed. Correctional Inst., 218 F.3d 250, 255 (3d Cir. Pa. 2000) ("it is proper . . . to take judicial notice of decisions of an administrative agency"); Mack  v. South Bay Beer Distributors, 798 F.2d 1279, 1282 (9th Cir. 1986) (abrogated on other grounds by Astoria Federal Sav. & Loan Ass'n v. Solimino, 501 U.S. 104 (1991)) (noting that "a court may take judicial notice of records and reports of administrative bodies").   See also Romani v. Shearson Lehman Hutton, 929 F.2d 875, 879 (1st Cir. 1991) (quoting Fudge v. Penthouse Int'l, Ltd., 840 F.2d 1012, 1015 (1st Cir. 1988) (noting that "'when plaintiff fails to introduce a pertinent document as part of his pleading, defendant may introduce the exhibit as part of his motion attacking the pleading'").

Pease ("Pease"), was the sole owner of Little Sprouts and its director from July 2003 through July of 2006.  (Compl. at ¶¶ 5, 23.)

Defendant EEC is the agency responsible for licensing and regulating early education and care programs throughout the Commonwealth of Massachusetts.  Each of the eleven individual Defendants named in the Complaint is a Massachusetts state employee: Defendant Karen Burns is a group child care licensor for EEC; Defendant Erin Murphy Craft is a regional director for EEC; Defendant Linda Lenahan is a group and school age supervisor for EEC; Defendant Eric Lieberman is an EEC policy and training advisor; Defendant Judy Pasko is an EEC investigator; Defendant Denise J. Karlin is an assistant General Counsel with EEC; Defendant Brian LeTendre is a family child care supervisor with EEC; Defendant Iris Crespo is a licensor with EEC; Defendant Constantia T. Papanikolaou is the General Counsel of EEC; Defendant Ann Reale is the Commissioner of EEC; and Defendant John Daly is an employee with the Department of Children and Families ("DCF").[2] (Compl. at ¶¶ 7-18.)

---

[2] Formerly known as the Department of Social Services, DCF is the state agency responsible for investigating charges of child abuse and neglect and providing services for abused and neglected children and their families.  See Mass. Gen. Laws. ch. 119, §§ 1 et seq.

A dispute among the parties began on June 28, 2006, when Plaintiffs transported eighteen children in their care to a swim lesson without appropriate seat restraints. (Compl. at ¶ 26.)  Following the incident, Pease, in what the Complaint describes as "an overabundance of caution," filed a report with DCF pursuant to Mass. Gen. Laws ch. 119, § 51A[3] explaining that "[she] had taken children without car seats to swim lessons and [] walked them back to Little Sprouts."  (Compl. at ¶ 27.)

In response to this report, DCF conducted an investigation pursuant to Mass. Gen. Laws ch. 119, § 51B, and issued a report "supporting" allegations of neglect against Pease on August 1, 2006.[4]  Investigators concluded

---

[3]Mass. Gen. Laws ch. 119, § 51A requires a variety of professionals -- including day care providers -- to file a report with DCF if they have "reasonable cause to believe" a child may be suffering from abuse or neglect.  Id.  Section 51A makes the failure to report such incidences punishable by fine.  Id.  The Complaint avers that four other "mandated reporters" were present on June 28, 2006 but that none other than Pease reported the "car seat" incident as abuse or neglect. (Compl. at ¶ 28.)

[4]Mass. Gen. Laws ch. 119, § 51B requires DCF to investigate and evaluate reports made pursuant to § 51A and to make a written determination as to whether the suspected child abuse or neglect is substantiated.  Id.  If a § 51A report is "supported," (i.e., if the DCF investigation substantiates suspicions contained in a § 51A report), DCF must take steps "to protect the child and correct the underlying situation that led to the abuse or neglect." Lindsay v. Dep't of Soc. Servs., 791 N.E.2d 866, 871 (Mass. 2003).

that there was "reasonable cause to believe" that the June 28, 2006 failure to use car seats amounted to neglect. (Compl. at ¶ 32.)  The report also contained findings that Plaintiffs had transported children without appropriate parental consent -- an allegation Plaintiffs deny.  (Compl. at ¶¶ 36, 37.)  Plaintiffs sought a hearing in regard to the decision with DCF's Fair Hearing Unit.  It appears that, due to staffing shortages, no hearing was ever conducted.  (Dkt. No. 30, Pls.' Opp. to Defs.' Mot. to Dismiss, Ex. A.)

Soon thereafter, EEC initiated its own independent investigation into Plaintiffs' operation; this investigation continued up to July 20, 2007.[5]  (Compl. at ¶ 29.) Plaintiffs allege the EEC investigation was "flawed" and conducted by overzealous investigators whose real goal was their own advancement within the agency.  (Compl. at ¶¶ 29, 30.)  The Complaint charges that Eric Lieberman, an EEC Policy and Training Advisor, contributed to these deficiencies by failing to properly train other EEC employees on "the legal limits of their investigative abilities." (Compl. at ¶ 31.)

In October of 2006, EEC produced a report and order

---

[5] Mass. Gen. Laws ch. 15D, § 9(c) requires EEC to "promptly investigate and evaluate" any 51B notice transmitted to it by DCF and determine whether a facility licensed or approved by EEC  "is being operated in compliance with . . . [applicable] rules and regulations." Id.

entitled "Order to Protect Children: Order to Correct Violations and Notice of Sanctions" ("Order I").  The agency found that Pease and other Little Sprouts staff members had failed to report neglect or abuse children may have suffered at home.  (Compl. at ¶ 39.)  Plaintiffs dispute this finding.  (Compl. at ¶ 40.)  Order I required Plaintiffs to freeze enrollment at Little Sprouts and to hire (subject to EEC's oversight and approval) a new director to replace Pease.  (Compl. at ¶ 43.)  Plaintiffs were also required to post the allegations against them "in a conspicuous location" at Little Sprouts.  (Compl. at ¶ 39, 42.)

With notice to EEC, Plaintiffs initiated an effort to hire and train a new director as required by Order I. Plaintiffs selected a candidate who they aver was qualified for the position on EEC's Professional Child Care Qualifications Registry. (Compl. at ¶¶ 44, 45.)  However, EEC denied the proposed new director approval based on four--year-old allegations against her.  Plaintiffs maintain that the new director did not have a disqualifying background and that the re-activation of the four-year-old investigation was illegal. (Compl. at ¶¶ 46, 48.)

EEC investigators made further visits to Little Sprouts.  After one such visit, investigators concluded that Plaintiffs had violated the enrollment freeze mandated by

Order I.  (Compl. at ¶ 50.)  Plaintiffs contend that the investigation leading to this finding was insufficient, consisting solely of one EEC investigator entering a room at Little Sprouts, counting heads, and stating that "there's one extra child in here," to which a teacher responded "she's mine."  (Compl. at ¶ 50.)

On June 8, 2007, EEC issued a new order, entitled "Order to Protect Children: Notice of Revocation and Second Notice of Sanctions against Plaintiffs under 102 CMR 1.07(4)" ("Order II").  Order II faulted Plaintiffs for having failed to comply with Order I by failing to hire a new director and by enrolling at least one child in violation of the enrollment freeze. (Compl. at ¶ 63.)  As a result of these alleged violations, EEC revoked Little Sprouts' group day care license.  (Compl. at ¶ 64.)

Plaintiffs timely appealed this revocation to the Massachusetts Division of Administrative Law Appeals ("DALA").  (Dkt. No. 35, Defs.' Reply Br. to Plfs.' Opp'n to Defs.' Mot. to Dismiss, Ex. A,  Department of Early Education and Care v. Little Sprouts Day Care-Sherry Pease, Executive Office for Administration and Finance, Division of Administrative Law Appeals, Dkt. No. OC-07-526 (March 12, 2008) (hereinafter "DALA decision") at 1.)  While this appeal was pending, it appears that Little Sprouts continued

to operate, and EEC continued to conduct monitoring visits. On June 18, 2007, Defendants Linda Lenahan and Karen Burns conducted an unannounced visit. (Compl. at ¶ 49.) On July 5, 2007, EEC made a determination that an emergency situation existed at Little Sprouts that warranted an immediate suspension of Plaintiffs' group child care license. (DALA Decision at 1.) The emergency suspension went into effect on July 20, 2007 -- prior to any hearing. Id. At this time, Little Sprouts Day Care closed. (Compl. at ¶ 65.)

Plaintiffs filed an appeal of EEC's emergency suspension, which was consolidated with the pending revocation appeal. (DALA Decision at 1). On November 1, 2007, a hearing on both matters was held before a DALA administrative magistrate, and on March 12, 2008 the magistrate issued an opinion affirming both the emergency suspension and the underlying revocation of Plaintiffs' group child care license. (DALA Decision at 28). See Mass. Gen. Laws ch. 7, § 4H (conferring upon administrative magistrates the duty "to provide speedy and fair disposition of all [administrative] appeals"). Plaintiffs filed no objection to the magistrate's decision in the superior court. See Mass. Gen. Laws ch. 30A, § 14 (allowing "any person . . . aggrieved by a final decision of any agency" to

challenge that decision in the superior court within thirty
days).  Plaintiffs commenced this action on November 19,
2008.

### III. <u>DISCUSSION</u>

A. <u>Standard of Review</u>.

A complaint is subject to dismissal under Rule 12(b)(6)
if, after accepting all well-pleaded facts as true and
drawing all reasonable inferences in favor of a plaintiff,
the court determines that it "fails to state a claim upon
which relief can be granted."  <u>Edes v. Verizon Communs.</u>, 417
F.3d 133, 137 (1st Cir. 2005); Fed. R. Civ. P. 12(b)(6).  To
survive a motion to dismiss, a complaint must contain
"sufficient factual matter" to state a claim to relief that
is both actionable as a matter of law and "'plausible on its
face.'"  <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009)
(quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570
(2007)).  A complaint need not contain detailed factual
allegations, but more is required than "an unadorned, the
defendant-unlawfully-harmed-me accusation."  <u>Id</u>.  At a
minimum, a plaintiff's allegations must be sufficiently
specific to provide "fair notice of what the . . . claim is
and the grounds upon which it rests,"  <u>Twombly</u>, 550 U.S. at
555 (alteration in original) (quoting <u>Conley v. Gibson</u>, 355
U.S. 41, 47 (1957)), and to afford each defendant a

10

"meaningful opportunity to mount a defense.'"   Diaz-Rivera v. Rivera-Rodriguez, 377 F.3d 119, 123 (1st Cir. 2004) (quoting Rodriguez v. Doral Mortgage Corp., 57 F.3d 1168, 1172 (1st Cir. 1995)).

B. Analysis.

As amended, Plaintiffs' Complaint contains twenty-two counts against various Defendants.  Broadly speaking,[6] about half of Plaintiffs' claims purport to rest on federal constitutional law and are brought pursuant to 42 U.S.C. § 1983.[7]  The remainder consist of various related state common law tort claims.  Plaintiffs do not, by and large, align their claims with specific conduct of individual Defendants.  Rather, the Complaint sets out only that "all defendants" are responsible for twenty of the twenty-two claims asserted.  This approach has produced a somewhat ungainly complaint -- often ambiguous in its allegations and nebulous in its claims.  Given this reality, the simplest method of analyzing the parties' positions is first to consider what claims are barred by the Eleventh Amendment and then to focus on the sufficiency of Plaintiffs' federal

---

[6] Although each count is labeled a "cause of action," a number appear to only provide support for other claims.

[7] Plaintiffs' 42 U.S.C. § 1985 conspiracy claim (Count V) has been voluntarily withdrawn. (Dkt. No. 30, Pl's Mem. in Opp. 8.)

claims against each remaining Defendant.  The final portion
of this memorandum will discuss whether the court should
exercise jurisdiction over Plaintiffs' state causes of
action.

1.  <u>Sovereign Immunity</u>.

All claims against the Commonwealth and EEC are barred
by the Eleventh Amendment and the doctrine of sovereign
immunity.  Absent an express waiver, the Eleventh Amendment
generally prohibits federal courts from entertaining a suit
brought by private parties against a state or its
representative agencies.  <u>Pennhurst State Sch. & Hosp. v.
Halderman</u>, 465 U.S. 89, 97-99 (1984).  This bar is
jurisdictional and applies "regardless of the nature of the
relief sought."  <u>O'Neill v. Baker</u>, 210 F.3d 41, 47 (1st Cir.
Mass. 2000) (quoting <u>Pennhurst</u>, 465 U.S. at 100).

Plaintiffs' efforts to avoid this proscription are
unavailing.  The argument that Massachusetts expressly
waived its immunity to suit with the enactment of the
Massachusetts Tort Claims Act (MTCA), <u>see</u> Mass. Gen. Laws.
ch. 258, §§ 1 <u>et</u> <u>seq.</u>, lacks merit.  While the MTCA
expressly allows citizens to bring suits against the
Commonwealth in state court, it does not waive the
Commonwealth's immunity against the same suits in <u>federal</u>
court.  <u>Caisse v. DuBois</u>, 346 F.3d 213, 218 (1st Cir. 2003).

See also Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 241 (1985) ("in order for a state statute . . . to constitute a waiver of Eleventh Amendment immunity, it must specify the State's intention to subject itself to suit in federal court") (emphasis in original).  Since it is evident that the Commonwealth has not waived its immunity or otherwise consented to suit, all of the claims against it and its agency, including those seeking declaratory relief,[8] must be dismissed as barred by the Eleventh Amendment.

Insofar as the Complaint can be read to assert claims for monetary relief against individual Defendants in their official capacities, these claims are also barred under the Eleventh Amendment.  See Wang v. New Hampshire Bd. of Registration in Medicine, 55 F.3d 698, 700 (1st Cir. 1995) (quoting Johnson v. Rodriguez, 943 F.2d 104, 108 (1st Cir. 1991)).  Of course, the Eleventh Amendment does not

---

[8]Plaintiffs alternative argument, that they may maintain their claims against the Commonwealth and EEC seeking prospective declaratory relief under the doctrine stated in Ex Parte Young, 209 U.S. 123 (1908), is also unavailing.  The Young doctrine allows a federal court to enjoin a state official in his or her official capacity "to conform future conduct to the requirements of federal law," even in the absence of an express waiver of immunity.  Rosie D. v. Swift, 310 F.3d 230, 234 (1st Cir. 2002) (citation omitted).  By its own terms, however, the Young doctrine does not extend to claims "directed . . . against the state or a state agency eo nomine but instead against state officials acting in violation of federal law."  Neo Gen Screening, Inc. v. New England Newborn Screening Program, 187 F.3d 24, 27 (1st Cir. 1999).

necessarily bar Plaintiffs from asserting claims against state officials in their <u>individual</u> capacities.  <u>O'Neill v. Baker</u>, 210 F.3d at 47.  The court, therefore, turns to the sufficiency of Plaintiffs' federal claims made against the individual Defendants.

2. <u>Plaintiffs' Federal Claims Against Individual Defendants</u>.

Plaintiffs have asserted their federal claims under 42 U.S.C. § 1983, which creates a cause of action for persons denied a federally protected right.  See <u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 92 (1989).  An actionable section 1983 claim must allege facts sufficient to demonstrate: (1) the deprivation of a federally protected right; (2) action taken under color of law; and (3) a causal connection between the actor and the deprivation.  <u>Sanchez v. Pereira-Castillo</u>, 590 F.3d 31, 41 (1st Cir. 2009) (citing 42 U.S.C. § 1983).  <u>See</u> <u>also</u> <u>Gagliardi v. Sullivan</u>, 513 F.3d 301, 305 (1st Cir. 2008) (noting that to survive a motion to dismiss, a Complaint must set forth allegations "respecting each material element necessary to sustain recovery").  As Defendants do not contest that their actions were taken under color of Commonwealth law, the sufficiency of Plaintiffs' federal claims turns on whether they have alleged facts sufficient to show the deprivation of a federally protected right and a causal connection between

14

that deprivation and Defendants.

a. <u>The Deprivation of a Federally Protected Right</u>.

In a number of broadly worded counts, Plaintiffs seek to satisfy the first element, deprivation of a federal right, by alleging violations of their rights arising under the Fourth Amendment, the Fifth Amendment, the Seventh Amendment, the Eighth Amendment and the Due Process and Privileges and Immunities clauses of the Fourteenth Amendment. However, Plaintiffs fail to explicate or defend the majority of these claims, either in the Complaint or in their opposition to Defendants' Rule 12(b) motion.

In this circuit, it is insufficient "merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work . . . ." <u>United States v. Zannino</u>, 895 F.2d 1, 17 (1st Cir. 1990). At a minimum, a plaintiff must set forth facts "as to who did what to whom, when, where, and why . . . ." See <u>Educadores Puertorriquenos en Accion v. Hernandez</u>, 367 F.3d 61, 68 (1st Cir. 2004). Because Plaintiffs have failed to provide the facts or the legal argumentation necessary to demonstrate how their rights may have been violated under the Fourth Amendment, the Fifth Amendment, the Seventh Amendment, the Eighth Amendment or the Privileges and Immunities clause of the Fourteenth Amendment, claims rooted in these provisions

will be dismissed.

Having swept aside this constitutional dead wood, the court is left with Plaintiffs' allegations that their procedural due process rights have been violated.  The Fourteenth Amendment's Due Process Clause provides that no state may "deprive any person of life, liberty, or property without due process of law . . . ."  U.S. Const. Amend. XIV, § 1.  The fundamental requirement of procedural due process is "the opportunity to be heard at a meaningful time and in a meaningful manner."  Mathews v. Eldridge, 424 U.S. 319, 333 (1976).  A viable claim, therefore, must allege facts sufficient to demonstrate two factors: first, that Plaintiff has been deprived of an interest encompassed within the Fourteenth Amendment's protection of "life, liberty or property" and, second, that the procedures accompanying the deprivation were constitutionally insufficient.  Wilkinson v. Austin, 545 U.S. 209, 221 (2005); Hewitt v. Helms, 459 U.S. 460, 472 (1983); Costa-Urena v. Segarra, 590 F.3d 18, 26 (1st Cir. 2009).  In determining the sufficiency of procedures accompanying a particular deprivation, a court must balance a number of factors, including: (1) the nature of the private and public interests involved; (2) the risk of erroneous deprivation accruing under the procedures used by the state; and (3) the probable benefit of demanding

16

additional procedural safeguards.  See <u>Mathews</u>, 424 U.S. at
335.

Here, Plaintiffs argue that they were denied an
opportunity to be heard in relation to two events: (1) the
emergency suspension and underlying revocation of Little
Sprouts' group day care license and (2) the decision to
"support" allegations of neglect against Plaintiff Pease --
what Plaintiffs have characterized as the "revocation" of
Pease's "director's license."

Beginning with Plaintiffs' allegations regarding
Plaintiffs' group day care license, there is no dispute that
Plaintiffs had a property interest in the state-issued
license that activated due process concerns.  See <u>Bell v.
Burson</u>, 402 U.S. 535, 539 (1971); <u>Beauchamp v. De Abadia</u>,
779 F.2d 773, 775 (1st Cir. 1985).  Defendants' argument is
that the November 1, 2007 hearing before the Division of
Administrative Law Appeals provided Plaintiffs a full
measure of process with regard to this interest.  Plaintiffs
disagree, arguing that they were entitled to a pre-
deprivation hearing and, alternatively, that the November 1,
2007 administrative hearing was inadequate.

Plaintiffs are correct that due process is ordinarily
construed to require "some kind of hearing" <u>before</u> a state
may deprive an individual of a protected property interest.

17

Zinermon, 494 U.S. at 127.  This requirement, however, is far from absolute.  Herwins v. City of Revere, 163 F.3d 15, 18 (1st Cir. 1998) (noting that the generalization that due process requires a pre-deprivation hearing "is a very loose one.")  Where a state's interest in quick action is particularly strong, a pre-deprivation hearing is not constitutionally necessary so long as adequate post-deprivation process is available.  Federal Deposit Ins. Corp. v. Mallen, 486 U.S. 230, 240 (1988); Parratt v. Taylor, 451 U.S. 527, 538 (1981), overruled in part by Daniels v. Williams, 474 U.S. 327, 330-331 (1986).

Here, the pre-hearing suspension of Plaintiffs' license was supported by such an interest.  Massachusetts law permits the pre-hearing suspension of a group day care license only in "emergency situation[s] which endanger[] the life, health, or safety of children or staff present in the program or facility."  102 C.M.R. 1.07(5); Mass. Gen. Laws. ch. 15D, § 10.  There can be no doubt that "the protection of children is a compelling state interest," Ridley v. Mass. Bay Transp. Auth., 390 F.3d 65, 86 (1st Cir. 2004), and one that often involves the need for immediate action.  Here, EEC made a determination (albeit one to which Plaintiffs continue to object[9]) that an emergency existed at Little

---

[9] Assuming arguendo that the emergency determination was erroneous, a pre-deprivation hearing would still not have

Sprouts that threatened the life, health, or safety of
children in Plaintiffs' care.  Under such circumstances, it
was neither practicable nor constitutionally required that
Defendants provide pre-deprivation protections beyond those
Plaintiffs were afforded.

     Nor was the November 1, 2007 post-deprivation hearing
constitutionally insufficient.  Plaintiffs posit that the
hearing was not meaningful because it took place "a full
three months after her day care had shut its doors, its
business destroyed," and was limited "to the exclusive issue
of whether an emergency existed."  (Dkt. No. 30, Pls.' Opp'n
to Defs.' Mot. to Dismiss 14.)  These claims, however, do
not withstand scrutiny.

     There is no question that, by the measure of EEC's own
regulations, Plaintiffs' hearing was untimely.[10]  A failure
to meet state regulatory deadlines alone, however, does not

_____

been constitutionally required. "Where an official errs in
declaring an emergency, the <u>only</u> feasible procedure is a
post-deprivation remedy . . . ."  <u>Herwins</u>, 163 F.3d 15 at 19
(citing <u>Hudson v. Palmer</u>, 468 U.S. 517, 531-533 (1984))
(emphasis added).
     [10] EEC regulations entitled Plaintiffs to a hearing
within ten days to determine whether there was "reasonable
cause to believe" that an emergency situation justifying
suspension existed, see 102 C.M.R. 1.07(5)(a)-(b).  Although
a hearing appears to have been originally scheduled within
the ten-day time frame, it was continued twice, once for
approximately three weeks on motion by Plaintiffs, and once
for approximately two and a half months on motion by
Defendants and over the objection of Plaintiffs.  (DALA
decision 2, n. 1).

establish a violation of federal due process.  See <u>Morris v.
City of Danville</u>, 744 F.2d 1041, 1048 n.9 (4th Cir. 1984).
The constitutional significance of a particular delay must
be evaluated in light of "the importance of the private
interest and the harm to this interest occasioned by delay;
the justification offered by the Government for delay and
its relation to the underlying governmental interest; and
the likelihood that the interim decision may have been
mistaken." <u>Mallen</u>, 486 U.S. at 242.

Applying these factors here, it is clear that the delay
in conducting Plaintiffs' post-deprivation hearing, even if
unjustified, was not constitutionally significant.  The
uncontested public record makes clear that EEC's decision to
suspend Plaintiffs' license was <u>affirmed</u> by the Division of
Administrative Law Appeals following the November 1, 2007
hearing.  Plaintiffs have not alleged that an earlier
hearing would have changed this outcome.  While it is clear
that Plaintiffs' interest in their license was strong,
Plaintiffs have not demonstrated that the ninety-day delay
caused any harm to that interest or that there was a high
likelihood that the interim decision was mistaken.  <u>Mallen</u>,
486 U.S. at 242.  <u>Accord</u> <u>Berman v. Young</u>, 291 F.3d 976, 985
(7th Cir. 2002) (requiring a plaintiff to establish, "with
some degree of probability, that a timely hearing would have

prevented the extended infringement on [protected] rights"
(internal citation omitted)).[11]  Therefore, the delay in
conducting the hearing did not render it non-meaningful and
did not violate due process.

Likewise, Plaintiffs have failed to show that the
November 1, 2007 hearing was not conducted in a meaningful
manner.  The court is unpersuaded by Plaintiffs' bare
allegation that the hearing they were afforded was limited
"to the exclusive issue of whether an emergency existed"
such that they "were denied a hearing on the merits." (Dkt.
No. 30, Pls.' Opp'n to Defs.' Mot. to Dismiss (hereinafter
"Pls.' Opp'n") 14.)  The administrative magistrate's
decision not only affirms the emergency suspension of
Plaintiffs' license but also finds there was sufficient
evidence to support the underlying license revocation. (DALA
decision 28.)  In sum, Plaintiffs fail to state a viable
claim that the procedures attending the revocation of their
group day care license were constitutionally infirm.

Plaintiffs' second procedural due process claim is
grounded on what Plaintiffs characterize as Plaintiff
Pease's "individual license" to provide child care services
in Massachusetts.  According to Plaintiffs, Pease was

---

[11]Although theoretically such a denial may be actionable
for nominal damages, see Carey v. Piphus, 435 U.S. 247, 266
(1978), Plaintiffs do not request nominal damages in their
Complaint.

deprived of a cognizable liberty interest as a result of allegations against her being "supported" pursuant to Mass. Gen. Laws ch. 119, § 51B. (Pls.' Opp'n 9.) Plaintiffs allege that, as a result of the supported 51B report, Pease was "added to a state-wide 'central registry' as a perpetrator of abuse o[r] neglect," and was deprived of the ability to work in the field of child care in Massachusetts . . . . (Dkt. No. 30, Pls.' Opp'n to Defs.' Mot. to Dismiss 9-10.)

Defendants argue that Plaintiffs' claim fails as a matter of law because individual licenses to practice as a child care worker -- the basis for interest asserted -- are not issued in Massachusetts. According to Defendants, no attendant process was constitutionally due because Pease "could not have a protected liberty interest in a license that does not exist." (Dkt. No. 35, Defs.' Reply Br. to the Plfs.' Opp. to their Mot. to Dismiss ("Defs.' Reply") 4.)

Defendants' argument overstates the significance of formal state licensing procedures in the context of liberty interests. In contrast to property interests, which are "'created and . . . defined by existing rules or understandings that stem from an independent source such as state law,'" Hatfield-Bermudez  v. Aldanondo-Rivera, 496 F.3d 51, 59 (1st Cir. 2007) (quoting Bd. of Regents v. Roth,

22

408 U.S. 564, 577 (1972)), protected liberty interests
encompass "fundamental" or "natural" rights that exist
entirely apart from state law.  See <u>Schware v. Board of Bar
Examiners</u>, 353 U.S. 232 (1957); <u>Meyer v. Nebraska</u>, 262 U.S.
390, 399 (1923).  Moreover, within the rubric of
constitutionally protected liberty is "a core interest in
reputation" which is implicated "where (1) government action
threatens it, (2) with unusually serious harm, (3) as
evidenced by the fact that employment (or some other right
or status) is affected."  <u>Beitzell v. Jeffrey</u>, 643 F.2d 870,
878 (1st Cir. 1981).  In light of Plaintiffs' allegations,
the question of whether Pease possessed or has been deprived
of an "individual license," strictly speaking, is
irrelevant.  Plaintiffs have plausibly demonstrated that the
supported 51B report threatened Pease's reputation with
serious harm, while stripping her of her job as day care
director and threatening her future employability.  See
<u>Valmonte v. Bane</u>, 18 F.3d 992, 999-1002 (2d Cir. 1994).
Under these circumstances, it cannot be said at this
juncture that the decision to support allegations against
Pease did not activate due process concerns.  Thus, Pease
was entitled to some meaningful opportunity to be heard in
relation to that decision.  <u>Mathews</u>, 424 U.S. at 333.

     For the reasons discussed above, this entitlement did

not necessarily extend to a full pre-deprivation hearing so long as adequate <u>post</u>-deprivation process was available. <u>See</u> <u>Mallen</u>, 486 U.S. at 240; <u>Parratt</u>, 451 U.S. at 538. Ordinarily, persons who appeal its decision to support an allegation of abuse are entitled by DCF regulation "to receive a just and fair decision from an impartial hearing officer based on the facts and applicable regulations."  110 C.M.R. § 10.01.  At such a hearing, aggrieved parties have the right to be represented by counsel, 110 C.M.R. § 10.11, and are afforded the opportunity to present and cross-examine witnesses, 110 C.M.R. § 10.22, and establish by a preponderance of the evidence that DCF "acted without a reasonable basis or in an unreasonable manner which resulted in substantial prejudice to the aggrieved party."  110 C.M.R. § 10.23.  Had Plaintiffs in fact been afforded such a hearing, due process would not have been violated.  See <u>Hudson v. Palmer</u>, 468 U.S. 517, 532, n. 12 (1984) (noting that, for the purposes of a procedural due process claim, "the state's action is not complete unless or until the state fails to provide an adequate post[-]deprivation remedy. . . .")  It is apparent, however, that Plaintiffs never received their "Fair Hearing."  As of September 23, 2009, more that three years after the decision to "support" allegations had been issued, DCF's Fair Hearing office had

24

yet to schedule the hearing Plaintiff had requested on May
18, 2007.  In a letter of that date, Barney Keezell,
Director of DCF's Fair Hearing office, informed counsel for
Plaintiffs that the office was "currently in the process of
possibly scheduling [Plaintiffs'] appeal in the near
future."  (Dkt. No. 30, Pls.' Opp. to Defs.' Mot. to
Dismiss, Ex. A.)  This failure to actually conduct a hearing
deprived Pease of her federally protected right to Due
Process by denying her any meaningful opportunity to be
heard.

b. Causation

    Having plausibly shown the deprivation of a federally
protected right, the question remains whether Plaintiffs
have sufficiently demonstrated how each Defendant
"participated in the conduct" that deprived Pease of her
rights.  Cepero-Rivera v. Fagundo, 414 F.3d 124, 129 (1st
Cir. 2005).  It is not enough to allege that the failure to
conduct a Fair Hearing deprived Pease of her procedural due
process rights.  To state a viable section 1983 claim, a
complaint must also set forth factual allegations
demonstrating how defendants caused the alleged constitution
violation through their own individual actions.  Sanchez,
590 F.3d at 48.  It is on this hurdle that Plaintiffs

stumble and, as a result, their remaining federal claim must fall.

Plaintiffs fail to demonstrate a causal relationship between the deprivation asserted and any of the eleven individual defendants actually named in the Complaint.  As discussed, the Due Process violation Plaintiffs have plausibly alleged is the failure to afford Pease a fair post-deprivation hearing on the issue of DCF's 51B decision to support allegations of neglect.  The only two Defendants alleged to have taken any part the 51B report in question are Judy Pasko of EEC and John Daly of DCF.  (Compl. at ¶ 34.)   Notably absent, however, is any specific allegation that Pasko or Daly made, informed, or were otherwise responsible for DCF's failure to provide Plaintiffs with a Fair Hearing.  Although the Complaint identifies John Daly as an agent of DCF, (Compl. ¶ 16), it nowhere suggests that he was part of DCF's "Fair Hearing" division responsible for the scheduling or administration of post-decision hearings. The Complaint alleges only that Daly, along with Pasko, acted as "investigator, prosecutor and judge" and failed to provide any meaningful notice or opportunity to be heard prior to the decision.  (Compl. at ¶¶ 34, 35 & 38.) Moreover, Plaintiffs have not sufficiently demonstrated how

Judy Pasko, an agent of EEC, could have "caused" the constitutional violation they have alleged.  The actions upon which Plaintiffs' claim rests -- both the initial decision to "support" allegations of child neglect against Pease, and provision of a "fair hearing" to challenge that decision -- are functions committed by statute and regulation not to EEC but to DCF.  <u>See</u> Mass. Gen. Laws ch. 119, § 51B; 110 C.M.R. 4.32, 110 C.M.R. § 10.01.[12]

In sum, because the Complaint, even when viewed in the light most favorable to Plaintiffs, fails to demonstrate how any Defendant "participated in the conduct" that deprived Pease of her rights, <u>Cepero-Rivera</u>, 414 F.3d at 129, Plaintiffs' remaining federal claims must be dismissed.

3. <u>Plaintiffs' State Law Claims</u>

Under 28 U.S.C. § 1367, a district court may decline to exercise supplemental jurisdiction if "the district court has dismissed all claims under which it has original jurisdiction." 28 U.S.C. § 1367(c); see <u>Claudio-Gotay v. Becton Dickinson Caribe, Ltd.</u>, 375 F.3d 99, 104 (1st Cir.

---

[12] The court must reject, in light of the plainly contrary statutory language, Plaintiffs' conclusory allegations that, in this case, the 51B report was issued by EEC and produced in part by EEC employee Judy Pasko. (Compl. at 32 & 34)  See <u>United States v. AVX Corp.</u>, 962 F.2d 108, 115 (1st Cir. Mass. 1992) (noting that a court need not "accept every allegation made by the complainant, no matter how conclusory or generalized").

2004).  Here, Plaintiffs have not sufficiently asserted any actionable federal claims.  In the absence of a cognizable federal claim forming the basis of the subject matter jurisdiction, this court declines to exercise supplemental jurisdiction over any pendant state law claims alleged in the Complaint.

## IV.  CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (Dkt. No. 27) is hereby ALLOWED.  Plaintiffs' state law claims are dismissed, without prejudice to their refiling in state court.  This case may now be closed.

It is So Ordered.

/s/ Michael A. Ponsor
MICHAEL A. PONSOR
U. S. District Judge

28